No. 24-20018

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, as Trustee,

Plaintiff - Appellee

v.

Leeroy M. Myers; Barbara Myers,

Defendants - Appellants

---

## On Appeal from
United States District Court for the Southern District of Texas
4:22-CV-88

---

## APPELLEE'S BRIEF

---

Submitted By:

Robert L. Negrin
McCarthy & Holthus, L.L.P.
1255 W. 15th Street
Plano, TX 75075
(713) 515-9005
Rnegrin@mccarthyholthus.com

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust | Robert Negrin of McCarthy & Holthus, L.L.P. Plano, TX |
| Pretium Mortgage Acquisition Trust is a wholly-owned subsidiary of WSFS Financial Corporation ("WSFS"), which is a publicly-traded company. BlackRock, Inc. and The Vanguard Group Inc. each hold more than 10% of the stock of WSFS. | |

| Appellants: | Counsel for Appellants: |
|---|---|
| Barbara Myers | Ira Joffe Bellaire, TX |
| Leeroy Myers | Ira Joffe Bellaire, TX |

/s/ Robert L. Negrin
Attorney of record for Wilmington
Savings Fund Society

**STATEMENT REGARDING ORAL ARGUMENT**

Appellants waived oral argument. Whereas Appellee does not believe oral argument will significantly aid the Court in rendering its judgment in this appeal, should the Court conclude that oral argument is necessary, Appellee respectfully reserves its right to participate in oral argument,

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS........................................................................................iv

TABLE OF AUTHORITIES ................................................................................vi

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE CASE................................................................................1

SUMMARY OF THE ARGUMENT ......................................................................4

ARGUMENT ..........................................................................................................6

THE SERVICE OF PROCESS COMPONENT OF PERSONAL JURISDICTION IS
CONFIRMED BY THE RECORD…………………………………………………6

THE MYERS ACKNOWLEDGEMENT OF SERVICE IS A JUDICIAL ADMISSION ...........12

THE MYERS FORFEITED THEIR ARGUMENT ON NEGOTIABILITY………………...13

EVEN IF NOT FORFEITED, THE INSTRUMENT IS A NEGOTIABLE INSTRUMENT…….16

WILMINGTON SAVINGS' AUTHORITY TO ENFORCE THE NOTE.............................20

ASSIGNMENT AND TRANSFER OF THE SECURITY INSTRUMENT AND THE NOTE AND
REJECTION OF EXECUTORY CONTRACTS………………………………………..21

LIMITATIONS ......................................................................................................24

LOAN DEFAULT...................................................................................................26

DENIAL OF DUE PROCESS....................................................................................29

UNRESOLVED ISSUE OF MATERIAL FACT ...........................................................30

CONCLUSION AND PRAYER ...........................................................................31

CERTIFICATE OF SERVICE .............................................................................32

CERTIFICATE OF COMPLIANCE.....................................................................32

# TABLE OF AUTHORITIES

## Cases

*Aguirre v. Armstrong World Indus., Inc.,* 901 F.2d 1256, 1258 (5th Cir. 1990).....16

*Boren v. U.S. Nat. Bank Ass'n,* 807 F.3d 99, 104 (5th Cir. 2015) ...........................26

*Bradley v. Allstate Ins. Co.,* 620 F.3d 509, 519 (5th Cir. 2010)..............................16

*CANarchy Craft Brewery Collective, L.L.C. v. Tex. Alcoholic Beverage Comm'n,* 37 F.4th 1069, 1077 (5th Cir. 2022)...........................................................................15

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)..................................................................................................................30

*EMC Mortg. Corp. v. Window Box Ass'n, Inc.,* 264 S.W.3d 331, 335-36 (Tex. App.—Waco 2008, no pet.)...................................................................................25

*Ergo Sci., Inc. v. Martin,* 73 F.3d 595, 599–600 (5th Cir. 1996) ...........................12

*Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991) .........................31

*FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson,* 636 F.2d 1300, 1312 & n. 61 (D.C.Cir.1980) ........................................................................................................6

*Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001)......25

*In re Marron,* 485 B.R. 485, 488–89 (D.Mass.2012).............................................24

*International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)..................................................................................................................7

*Kanida v. Gulf Coast Med. Pers. LP,* 363 F.3d 568, 579 (5th Cir. 2004)...............29

*Karam v. Brown,* 407 S.W.3d 464, 473 (Tex. App.—El Paso 2013, no pet.).........27

*Khan v. GBAK Props.,* 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.) .......................................................................................................... 25,26

*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885, 110 S. Ct. 3177, 3187, 111 L. Ed. 2d 695 (1990)...............................................................................................30

*Martinez v. Bally's Louisiana, Inc.,* 244 F.3d 474, 476 (5th Cir. 2001) .................12

*Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940) ......................7

*Moore v. Wells Fargo Bank, N.A. as trustee for MASTR Asset Backed Sec. Tr. 2004-OPT2, Mortgage Pass-Through Certificates,* 685 S.W.3d 843, 846 (Tex. 2024) .......................................................................................................... 26, 29

*Provident Life & Acc. Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001)............31

*Reinagel v. Deutsche Bank Nat. Tr. Co.,* 735 F.3d 220 (5th Cir. 2013)..... 21, 23, 24

*Rollins v. Home Depot USA,* 8 F.4th 393, 397 (5th Cir. 2021) ...............................15

*Salve Regina Coll. v. Russell,* 499 U.S. 225, 231, 111 S. Ct. 1217, 1221, 113 L. Ed. 2d 190 (1991)...................................................................................................13

*Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.,* 509 F.3d 216, 221 (5th Cir.2007) ................................................................................30

*Sojourner T v. Edwards,* 974 F.2d 27, 30 (5th Cir.1992) ........................................30

*Swoboda v. Wilshire Credit Corp.,* 975 S.W.2d 770, 776–77 (Tex.Ct.App.1998) .25

*Templeton v. Jarmillo,* 28 F.4th 618, 622 (5th Cir. 2022) ......................................15

*Terrell v. Ozark Capital Corp.,* 688 F. Supp. 3d 448, 452 (W.D. Tex. 2023) ........19

*Trang v. Bean,* 600 Fed. Appx. 191, 194 (5th Cir. 2015)........................................23

*Ward v. Stanford,* 443 S.W.3d 334, 343 (Tex. App.—Dallas 2014, pet. denied)..13, 20

## Statutes

Tex. Bus. & Com. Code § 3.106................................................................ 18, 19, 20

Tex. Bus. & Com. Code § 3.308................................................................................21

Tex. Bus. & Com. Code §3.104................................................................... 13, 17

Tex. Bus. & Com. Code §3.205(b) ...........................................................................17

Tex. Civ. Prac. and Rem. Code § 16.035(a) ............................................................24

## Rules

FED. R. APP. P. 4(a)(1)(A) ................................................................................... vii

## Treatises

Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1083, at 332–33 (1969) ..............................................................................................................................6

## JURISDICTIONAL STATEMENT

Wilmington Savings concurs in (A), (B) and (D) of the Myers Jurisdictional Statement. Wilmington Savings disagrees with (C) of the Myers Jurisdictional Statement and this Court's Published Order filed March 18, 2024, wherein the Court found that the district court's "Amended Final Judgment" did more than make a mere clerical change to the final judgment. Wilmington Savings disagrees with the Court's order and asserts that pursuant to FED. R. APP. P. 4(a)(1)(A) and other authorities cited in Wilmington Savings briefing in its Motion to Dismiss for Lack of Jurisdiction (Doc. 17) that the Court is without jurisdiction to hear this appeal because the Myers appeal was untimely filed.

## STATEMENT OF THE CASE

This appeal comes to the Court for its review of a summary judgment entered for Wilmington Savings (ROA.716). The case was brought by Wilmington Savings seeking a judgment to foreclose a loan extended to the Myers by Home123 Corporation, transferor of Wilmington Savings. The loan at issue is a Texas Home Equity loan consisting of a note ROA.19-22 signed by Leeroy Myers alone, secured by a Texas Home Equity Security Instrument ROA.23-44 signed by both Leeroy Myers and Barbara Myers.

The Loan is currently due for the July 1, 2009 payment. Relative for the present foreclosure context, notice of default was provided to Borrowers on or about January 29, 2021, demanding payment of all amounts that were past due. ROA.67-74.

By its Complaint, Wilmington Savings asserted claims for breach of contract and for foreclosure. ROA.14-15. The Myers answered and counterclaimed. ROA.529. The case proceeded through motions to dismiss and Wilmington Savings' motion for summary judgment. ROA.426-518. The Myers responded to Wilmington Savings' motion for summary judgment. ROA.584-668. The Court conducted a hearing on Wilmington Savings' motion for summary judgment on Jue 2, 2023 ROA.816. The Court granted Wilmington Savings' motion. ROA.826:8-12, 716-718.

The judgment determined that Wilmington Savings holds a first lien securing the home equity loan.ROA.716. The judgment determined that Wilmington Savings is the owner and holder of a note signed by Leeroy Myers with rights to enforce the note and security instrument. *Id.* Judgment was based on proof that Wilmington Savings performed all of its contractual obligations but that the Myers defaulted on their contractual obligations and failed to cure the defaults when demanded. *Id.* The judgment permits Wilmington Savings to foreclose its interest in the property securing the loan in accordance with terms contained in the security instrument and the Texas Property Code. *Id.* Upon foreclosure, the judgment provides that the

Myers will be divested of all right title and interest in the property pledged to secure the loan. *Id.*

The district court proceeding as shown by the record was the culmination of years of attempts to foreclose the property pledged for the loan, including multiple demands to cure, notices of intent to accelerate the indebtedness, accelerations of the indebtedness, actions brought under Texas Rule of Civil Procedure 736 (Expedited Order Proceeding), suits to stop the Expedited Order Proceeding, rescissions of acceleration, and previous federal litigation.

A procedural matter is appealed. The Myers allege that they were not effectually served with process. By their Rule 4(m) motion to dismiss ROA.254 filed on July 21, 2022, the Myers asserted ineffective service. The Court denied the motion at the July 29, 2022 scheduling conference. ROA.797:3-15 on its finding that July 29, 2022 was the date of service as accepted by counsel for the Myers. ROA.797:21. On August 19, 2022, following the district court's denial of the Myers Rule 4(m) motion to dismiss, the Myers filed their Rule 12 motions. ROA.282, which included an allegation of ineffective service ROA.299. That motion was heard by the district court on January 27, 2023 ROA.804:2. At the hearing, the district court determined that the Myers had intentionally avoided service of process ROA.810:20-22, as confirmed by a letter from counsel dated May 20, 2022 ROA.264, 266 and denied the motion to dismiss ROA.811:8-10. The May 20, 2022 letter provides evidence

that in addition to the acceptance of service stated on the record at the July 29, 2022 scheduling conference, that the Myers were served and given adequate notice that the action was pending. Myers, again through their counsel affirmatively acknowledged acceptance of service and confirmed that July 29, 2022 was the actual date of service of process on the Myers. ROA.796:4-9, 799:15-21.

The district court committed no error and the final judgment ROA.716 should be affirmed.

## SUMMARY OF THE ARGUMENT

### Service of Process

The record in this case shows that the Myers were served with process in such a fashion and in a manner reasonably calculated to effectuate the primary purpose of giving the Myers adequate notice that an action against them was pending. The Myers accepted service on the record and the district court entered rulings and scheduling in reliance on the Meyers express acceptance of service of process. The record shows that the Myers avoided service, but admitted their receipt in correspondence from their counsel. As a result, the Myers are now estopped to deny service.

### The Note as a Negotiable Instrument

Although a noble attempt, the issue of the status of the note at issue in the district court as a negotiable instrument was never broached below. The

negotiability of the note was not mentioned in any way below. To the extent an argument can be made that the issue was raised in the proceedings below, it was not raised in a sufficient enough form to permit the district court to rule on it. The issue of negotiability of the note was forfeited. Should this Court find that the issue was preserved for appeal, its examination of the record will further prove to the Court that the note is in fact a negotiable instrument under Texas law.

**Standing and Authority to Foreclose**

Through assignments and transfers, the Court will determine that Wilmington Savings included the note, thereby authorizing Wilmington Savings to foreclose. The Myers admit that if the note is shown to be a negotiable instrument (or the issue of negotiability is not preserved such that no determination on negotiability is reached) the Myers cannot assert their standing argument.

**Limitations**

Through their limitations argument, the Myers proffer that the numerous accelerations and abandonments of acceleration were effective as a waiver of Wilmington Savings, and presumably its transferors to ***ever*** accelerate the note and foreclose again. But as shown herein, abandonment or rescission of the accelerations restored the original maturity date and reset the limitations period. Further, rescission does not affect a lienholder's right to accelerate the maturity date of the debt in the future nor does it waive past defaults. The record shows that Wilmington

Savings claims of foreclosure was timely brought and survives the Myers limitations attack.

## Denial of Due Process

The Myers assertion that the district court's conducting a two minute scheduling conference a) before they were involved as litigation in the case; and b) before the issue of service of process had been through greater analysis and review presents no error by the district court. And if there was error it was harmless error that did not affect the final outcome of the case.

## UNRESOLVED ISSUES OF MATERIAL FACT

Grounds for the district court's summary judgment are supported by the record and this Court should affirm the district court's judgment.

## ARGUMENT

### THE SERVICE OF PROCESS COMPONENT OF PERSONAL JURISDICTION IS CONFIRMED BY THE RECORD

Federal Rule 4 is a flexible rule that should be liberally construed. so long as a party receives sufficient notice of the complaint. *See FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson,* 636 F.2d 1300, 1312 & n. 61 (D.C.Cir.1980); 4 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1083, at 332–33 (1969). Compliance with the rules governing service of process is to be construed in a manner reasonably calculated to effectuate their primary purpose: to give the

defendant adequate notice that an action is pending. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

The record in this appeal provides numerous instances indicating that the primary purpose of service was effectuated, namely proof that the Myers had adequate notice of the action pending against them. On February 18, 2022, ROA. 374-376, counsel for the Myers sent advisory correspondence to Wilmington Savings' counsel stating that "[i]t would have been better if your firm had sent the waiver under Rule 4(d) and tried to keep costs down." In light of and in response to this correspondence, a Waiver of Citation dated April 8, 2022 ROA.379 was provided to counsel for the Myers via email ROA.268. In response, and instead of accepting service as requested by waiver, the Myers, through their counsel sent counsel for Wilmington Savings a responsive email stating in essence that until counsel, the Myers or both were satisfied that Wilmington Savings' claims were within applicable statutes of limitation, that counsel would, in essence not accept service of process as previously promised.

Following at least the implicit promise to accept service by waiver and subsequent refusal, by declaration dated July 8, 2022 ROA.176 Wilmington Savings' trial counsel Ramona Ladwig verified that after numerous non-waiver attempts at service made between January 20, 2022 and March 1, 2022, ROA.367-

370.  Summonses and a copy of the Complaint were mailed to the Myers by first class mail dated May 10, 2022 ROA.178.  Despite the Myers argument that such was an incorrect method of service according to Rule 4, proof in the record indicates that the service was sufficient to effectuate the primary purpose of service.  Proof is shown through counsel for the Myers 'acknowledgement of the Myers receipt of the summons and complaint ROA. 264–267, 387-390 wherein counsel for the Myers states:

> "That all led up to the unsigned May 10, 2022, letter on McCarthy Holthus stationery, a copy of which was sent directly to Mr. Myers and to Mrs. Myers, but not to me. It said:
>
>> 'Enclosed please find a copy of the summons and complaint. After many attempts to serve in person and on your attorney, we are serving by mail pursuant to Rule S(b)(2)(C).' "

Receipt of the summons and complaint referred to in counsel's letter is later affirmed in the Myers' Motion to Dismiss ROA.254, 256 ¶12.

On July 29, 2022, the district court conducted a scheduling conference.  At that conference, the following dialogue was recorded:

ROA.787:13-788:2

THE COURT: And welcome to you.  Mr. Joffe, have you entered an appearance in this case?

MR. JOFFE: I filed a motion under Rule 4(m). That's the only thing that I filed at this point because we're well past the 90-day deadline and they don't have valid service under Rule 4.

THE COURT: No. But your entry of appearance is separate from whether they've been served.

MR. JOFFE: I would have thought that filing the motion would count as an entry of appearance.

THE COURT: Are you willing to concede you've entered your appearance then?

MR. JOFFE: I'm entering it under protest because of the lack of service, but I guess I'm here.

In that same scheduling conference, counsel for Wilmington Savings recounted the

efforts of service, including the requested and delivered waiver ROA 789:15-790:6

MS. LADWIG: Your Honor, if I may respond. You know, we've been trying to serve since January and the Myers instructed the process server on January 27th to contact Mr. Joffe and we immediately contacted him and we sent requests for waiver of service. That was not responded to. We never -- we sent about at least two to three requests for waivers of summons.  It's been -- they've increased our costs in trying to serve. And also under Rule 4(m), the Court, at its discretion and for good cause, may extend the time for service. Given that we've made so many attempts here and we tried to communicate with Mr. Joffe -- I myself have sent numerous e-mails to him and prior counsel has also – since January, since this case was filed, I think good cause exists for the Court to extend the time for service here.

THE COURT: Yes, I'll extend it. You can have until September 1st.

Later in the same conference, the district court made the following request of counsel

for the Myers ROA 796:2-9:

THE COURT: I don't know why this has gotten quite so complicated.  Mr. Joffe, can we not avoid plaintiff having to incur summons expense? Can't you just accept service without any formality?

MR. JOFFE: I guess in that case, since the Court is asking, that I will.

THE COURT: Okay. Thank you.

Additional dialogue at the scheduling conference also affirmed the understanding of the parties relative to service and scheduling when counsel for the Myers requested clarification on the effect of the affirmative statement on acceptance of service. The conference contains the following additional statements related to case activity to occur in the future, again based on the acceptance, admission and assumptions of service ROA 798:7-800:3:

THE COURT: Is there anything else we can accomplish today?

MR. JOFFE: Yeah, just for point of reference, the way they served the complaint, they didn't obey your local rules about including a copy of your procedures or the copy of the other order.[1] Can I get them -- well --

THE COURT: Are you talking about the local rules?

MR. JOFFE: I'm looking at your order for cases where it says there's a couple of things they're supposed to file or serve and they did not serve those.

THE COURT: Well --

MS. LADWIG: Number 1 --

MR. JOFFE: If it --

---

[1] At this point, the Myers have moved on from their complaint that they were not served, addressing the requirements of Judge Ellison for additional information to be provided with service of process and the fact that those procedures were not followed when the Myers were served. Judge Ellison's procedures require that Plaintiffs serve, along with the summons and complaint materials specified by Judge Ellison. Those requirements are found at: https://www.txs.uscourts.gov/page/district-magistrate-judges-procedures-schedules.

MS. LADWIG: -- Mr. Joffe has been monitoring the docket and second, we haven't had a scheduling order entered in the case.

THE COURT: No, I guess we haven't and --

MR. JOFFE: The Court's initial order --

THE COURT: Say it again, please.

MR. JOFFE: You have an initial order and it requires that a copy -- it be served along with a copy of your procedures and that was not -- neither of those were served.

THE COURT: Okay. We'll send that out.

MS. LADWIG: Okay. I will get a copy back to you, Mr. Joffe.

MR. JOFFE: So is this taking -- there was a prior instruction to the plaintiffs to file a summary judgment within 30 days. I assume that's now --

THE COURT: I'm not going to instruct you when to file it. I think that's the next step. But you may have a reason to believe that there's substance to a motion to dismiss.

MR. JOFFE: No, I understand that; but I'm sorry I didn't make it clear. At the previous scheduling conference that I did not attend, the plaintiff was instructed to file summary judgment within 30 days. What I wanted to make sure is if that is withdrawn, they don't have to file it within 30 days and we're counting today as the day that my clients have been served.

THE COURT: Yeah, today is the day they've been served. And if plaintiff doesn't want to file a motion for summary judgment, that's fine. It seems to me that in a case where we have potentially a dispositive issue, it's recognized at the outset it makes sense to file a dispositive motion. If it's denied, that hasn't jeopardized the right to file a motion for summary judgment later in the case.

MR. JOFFE: Okay.

When counsel for the Myers requested clarification on the effect of the

acknowledgement of service and the date of service (presumably for the purpose of

calculating post service deadlines), the Court affirms counsel's statement with "Yeah, today is the day they've been served" to which counsel replied, without condition: "Okay."

**THE MYERS ACKNOWLEDGEMENT OF SERVICE IS A JUDICIAL ADMISSION**

A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. *Martinez v. Bally's Louisiana, Inc.,* 244 F.3d 474, 476 (5th Cir. 2001). By the transcript of the scheduling conference, and acknowledgement of service, made without condition, the Myers judicially admitted their service date and are bound by that admission. Moreover, the dialogue shows that the district court was engaged in the conversation and hearing and made findings and rulings on the record and subsequent to the conference unequivocally demonstrating the district court's reliance on the Myers counsel's understanding of when service occurred. The district court's conclusion and reliance on counsel's acknowledgement of service is entitled to great weight. "Faced with a burgeoning docket and with a complex commercial lawsuit at hand, a district judge must be able to winnow the issues for trial. This includes reliance on statements made by counsel in open court." *Ergo Sci., Inc. v. Martin,* 73 F.3d 595, 599–600 (5th Cir. 1996). The Myers judicially admitted service and cannot now come into this Court to assert otherwise or seek review of the issue.

Following the scheduling conference, the parties submitted a Scheduling/Docket Control Order, signed by all counsel. ROA.280. Despite the foregoing events and the Myers judicial admissions relative to service, they subsequently filed a Rule 12 motion ROA.282 raising insufficient process and insufficient service of process again. That motion was denied at the hearing held on January 27, 2023 ROA.5 (unnumbered entry dated January 27, 2023). The Myers then filed Defendants' Original Answer and Counterclaims, ROA.529 again indicating their acceptance of their service and participation in resolution of the litigation.

All elements required for the district court's personal jurisdiction over the Myers were satisfied and the district court's final judgment should not be disturbed.

## THE MYERS FORFEITED THEIR ARGUMENT ON NEGOTIABILITY

A negotiable instrument is defined by Texas law; Tex. Bus. & Com. Code §3.104. Whether an instrument is a negotiable instrument is determined as a matter of law. *Ward v. Stanford,* 443 S.W.3d 334, 343 (Tex. App.—Dallas 2014, pet. denied.) Courts of appeal should review *de novo* a district court's determination of state law. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 231, 111 S. Ct. 1217, 1221, 113 L. Ed. 2d 190 (1991).

The Myers' first suggestion that the Note ROA.19-22 is other than a negotiable instrument under Tex. Bus. & Com. Code §3.104 is made in this appeal.

The district court record is devoid of the argument that the note is non-negotiable. The Myers make no mention of this contest in any pleading or motion reviewed in the district court; neither their Rule 12 Motions ROA.282, their reply to Wilmington Savings' response to the Rule 12 motions ROA.406 nor their response to Wilmington Savings' Motion for Summary Judgment ROA.584 raise any argument suggesting that the Note is non-negotiable.

The Myers brief in response to Wilmington Savings' motion for summary judgment ROA.584 described several arguments in opposition to Wilmington Savings' motion for summary judgment, but none mention the non-negotiability of the note. The arguments were:

1) an evidentiary objection to the affidavit of Korey McGovern ROA.439 offered in support of summary judgment alleging the affidavit was defective;

2) a claim of the defense of waiver of claims against the Myers based on an incorrect allegation as to the accrual of the cause of action under Texas law;

3) an unsupported allegation that Wilmington Savings admitted that its right to foreclose accrued on a date beyond the limitations period;

4) that the accrual of the right to foreclose could be rescinded only by agreement between the Myers and Wilmington Savings in accordance with Texas statute;

5) issues regarding Wilmington Savings' summary judgment evidence; and

6) Wilmington Savings' standing.

Now, for the first time on appeal the Myers claim that the note ROA.19-22 is non-negotiable. The Myers forfeited the argument by failing to raise it before the district court. *CANarchy Craft Brewery Collective, L.L.C. v. Tex. Alcoholic Beverage Comm'n,* 37 F.4th 1069, 1077 (5th Cir. 2022) ("Presenting the issue face up and squarely in the district court, is necessary to preserve it") (quotations and brackets omitted); *Rollins v. Home Depot USA,* 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court– thus raising it for the first time on appeal ...."). "[I]n order to preserve an argument for appeal, the argument (or issue) not only must have been presented in the district court, a litigant also must press and not merely intimate the argument during proceedings before the district court." *Templeton v. Jarmillo,* 28 F.4th 618, 622 (5th Cir. 2022) (quotation marks and citation omitted). Exceptions to this general rule include jurisdictional challenges and issues "purely legal" in nature that would "result in a miscarriage of justice" if the Court did not address them. *Rollins,* 8 F.4th at 398.

The Myers instant attempt to re-characterize the underlying basis for a defense to Wilmington Savings' summary judgment motion, namely, to review whether the note is a promissory note or negotiable is not an issue addressing jurisdiction. And even though the negotiability of an instrument is a question of law, this Court's

failure to take it up in this appeal when it was not argued below could by no stretch be characterized as a "miscarriage of justice." Moreover, the Myers failed to brief the issue that a possible miscarriage of justice would occur if this Court did not review the issue.[2] The Myers failed to preserve the issue for appeal. Whether the note is a negotiable instrument is forfeited.

Wilmington Savings anticipates that in reply, the Myers will argue that the issue is not waived on appeal because the argument on the issue was before the district court in a sufficient enough form to permit the district court to rule on it. *Bradley v. Allstate Ins. Co.,* 620 F.3d 509, 519 (5th Cir. 2010). But a complete review of the record and word search of the Myers Rule 12 Motions ROA.282 and their response to Wilmington Savings' motion for summary judgment ROA.584, as well as the entirety of the record shows not a single mention on the issue of the negotiability of the note.

### EVEN IF NOT FORFEITED, THE INSTRUMENT IS A NEGOTIABLE INSTRUMENT

As affirmed in their brief, the Myers admit that if the note qualifies as a negotiable instrument, "then the indorsement in blank on the signature page [ROA.22] would have been a sufficient basis for Wilmington Savings to claim

---

[2] If the issue had been raised in the district court, that court would have had the opportunity to summon further evidence on the character of the note as a negotiable instrument and issue a ruling. *Aguirre v. Armstrong World Indus., Inc.,* 901 F.2d 1256, 1258 (5th Cir. 1990). The Myers never gave the district court a chance to review the issue and thus forfeit their ability to argue it here.

ownership and the Myers would not be able to raise the issue of standing. Tex. Bus. & Com. Code §3.205(b)." (Appellants brief pg. 22). Since the issue of negotiability of the note was not raised, nor elements that might allow the Court to consider it here were not briefed, (*i.e.,* that failure to consider it would be a miscarriage of justice) by conclusion and the Myers admission, the issue of standing is likewise not reviewable. But, to hang proverbial meat on the bone, a review of the note proves its status as a negotiable instrument.

As correctly cited by the Myers in their brief, the definition of a negotiable instrument in Texas is provided at Tex. Bus. & Com. Code §3.104(a). A "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order. Tex. Bus. & Com. Code Ann. § 3.104. The note in this case contains such an unconditional promise:

## 1. BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. $50,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Home123 Corporation

ROA.19. The excerpted graphic from the Note shows that the requirement for an unconditional promise to pay is satisfied, principally by the language "I promise to

pay." The fixed amount part is satisfied by the identified currency and amount:

"U.S. $50,000.00, plus interest."

Inclusion of interest is allowable as part of the definition of a negotiable

instrument. The Note in this case contains provisions for payment of interest:

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of            7.465 %. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or Prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

ROA.19.

Other charges are also allowed under the terms of the Note. ROA.20, paragraph 5.

The Myers argue however that references in paragraph 5 of the Note are sufficient

to satisfy Tex. Bus. & Comm. Code §3.106's invalidation of the note as a negotiable

instrument showing "…(ii) that the promise or order is subject to or governed by

another record, or (iii) that rights or obligations with respect to the promise or order

are stated in another record." Tex. Bus. & Com. Code § 3.106. But, even as the

Myers have included in their citation to §3.106, "A reference to another record does not of itself make the promise or order conditional. *Id.* The note in this instance merely refers to the Security Instrument, and the Myers admit as much in the first paragraph on page 25 of their brief: *"The reference to any promise or obligation in "the Security Instrument or any other loan document involved in this Extension of Credit..."* (emphasis added). Moreover, the third paragraph of comment 1. to §3.106 allows for the references the Myers cite as disqualifying:

"Many notes issued in commercial transactions are secured by collateral, are subject to acceleration in the event of default, or are subject to prepayment, or acceleration does not prevent the note from being an instrument if the statement is in the note itself. See Section 3-104(a)(3) and Section 3-108(b). In some cases it may be convenient not to include a statement concerning collateral, prepayment, or acceleration in the note, but rather to refer to an accompanying loan agreement, security agreement or mortgage for that statement. Subsection (b)(i) allows a reference to the appropriate writing for a statement of these rights. For example, a note would not be made conditional by the following statement: "This note is secured by a security interest in collateral described in a security agreement dated April 1, 1990 between the payee and maker of this note. Rights and obligations with respect to the collateral are [stated in] [governed by] the security agreement. The bracketed words are alternatives, either of which complies."

Texas Courts have expressly held that such language does not convert an otherwise negotiable instrument to a non-negotiable instrument; *Terrell v. Ozark Capital Corp.,* 688 F. Supp. 3d 448, 452 (W.D. Tex. 2023) (holding that a mere "reference to another record does not of itself make the promise ... conditional). Other Texas courts have held similarly in considering whether language requiring that a maker give written notice of any principal prepayment is not a negotiability-

destroying 'other undertaking' because a maker's ability to prepay a loan is a discretionary benefit, not a burden."); *See also Ward v. Stanford,* 443 S.W.3d 334, 343 (Tex. App.—Dallas 2014, pet. denied) (renewal Note was negotiable even though it amended and restated original note).

In the note made the subject in this instance, the language quoted from it by the Myers – paragraph 5b does not burden the note with the conditions of any other collateral agreement or instrument. The references to the security instrument in no way conditions the promise of repayment made. It merely mentions the security instrument, which under the terms of Tex. Bus. & Comm. Code §3.106 and its comment will not render the note non-negotiable.

**WILMINGTON SAVINGS' AUTHORITY TO ENFORCE THE NOTE**

As stated above, the Myers' position in this appeal is that if the note is a negotiable instrument, then the Myers' are prevented from raising the issue of standing. Thus, their argument hinges on the note being non-negotiable. If the instrument is a negotiable instrument, which it is, then the provisions of the Texas Business & Commerce Code apply and Wilmington Savings is afforded the presumptions allowed therein. And since the note is a negotiable instrument, the Myers argument that Wilmington Savings is without contractual ability to enforce the negotiable instrument is never reached. Nevertheless, as a negotiable instrument, Wilmington Savings included the note with its complaint ROA.19 and alleged its

status as holder of the note.  ROA.15.  The original payee on the note was Home 123 Corporation.  Home 123 indorsed the note in blank.  ROA.22.  Once the note was attached to the Complaint and Wilmington Savings alleged its status as holder, it then became incumbent on the Myers to specifically deny the authenticity of any signature on the note. Tex. Bus. & Com. Code § 3.308.  The Myers made no such denial.

**ASSIGNMENT AND TRANSFER OF THE SECURITY INSTRUMENT AND THE NOTE AND REJECTION OF EXECUTORY CONTRACTS**

The summary judgment record supports the assignments and transfers of the security instrument, ROA.23-44 which are summarized in the table below.  The transfer of the security instrument presumptively included the note secured by the security instrument, whether or not the instrument of assignment expressly referenced the note.  *Reinagel v. Deutsche Bank Nat. Tr. Co.,* 735 F.3d 220, 225 (5th Cir. 2013).  Based on the assignments of the security instrument, which presumably included the note, Wilmington Savings is permitted to foreclose.

| Effective Date | Instrument | Grantor | Grantee | Record Location |
|---|---|---|---|---|
| 4/17/2008 | Assignment of Deed of Trust | New Century Mortgage Corporation | Mortgage Electronic Registration Systems, Inc. | 476 |
| 9/22/2009 | Assignment of Note and Deed of Trust | Mortgage Electronic | Litton Loan Servicing, LP | 478 |

| | | | | |
|---|---|---|---|---|
| | | Registration Systems, Inc. | | |
| 1/26/2011 | Assignment of Deed of Trust | Litton Loan Servicing, LP | Green Tree Servicing LLC | 481 |
| 6/21/2011 | Corrective Assignment of Deed of Trust | Mortgage Electronic Registration Systems, Inc. | Litton Loan Servicing, LP | 484 |
| 9/19/2018 | Assignment of Deed of Trust | Ditech Financial FKA Green Tree Servicing LLC | Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, as Trustee | 486 |
| 10/24/2018 | Corrective Assignment of Deed of Trust | Mortgage Electronic Registration Systems, Inc. | Litton Loan Servicing, LP | 489 |

The crux of the Myers argument relative to assignment and transfer of the note and security instrument hinges on their conclusion that because New Century Mortgage Corporation and Home123 Corporation rejected executory contracts with MERS in a bankruptcy proceeding, that the loan was not assignable by New Century/Home123 Corporation. The Myers argue that after the contract was rejected on March 29, 2008, MERS had no authority to do anything with the loan, and that New Century's assignment to MERS on April 17, 2008 assigned nothing.

In reviewing the argument, it is important to note the Myers unsupportable inferential leap that termination of an executory contract—the terms of which are not identified—effected New Century's ability to assign its interest in the security

instrument to MERS.  And this inference notwithstanding, the Myers lack standing

to challenge the validity of the assignments. *See, e.g., Reinagel v. Deutsche Bank*

*Nat'l Tr. Co.,* 735 F.3d 220, 225 (5th Cir. 2013) (holding that someone who is not a

party to an assignment lacks standing to challenge the validity of the assignment

based on the alleged lack of authority of the agent executing the assignment, since

an unauthorized contract is voidable, not void).  Even more fundamental than the

inference or the holding in *Reinagel,* however, is that neither New Century Mortgage

Corporation nor Home123 Corporation had an apparent executory contract with

MERS when the Myers signed the security instrument, at least relative to the Myers

loan.  ROA.23.  The security instrument names the identified "Lender," Home123

Corporation as the beneficiary.  ROA.23-24. That the Myers security instrument was

not a MERS loan when the instrument was signed is not apparent on the face of the

security instrument and absent an unidentified prohibition, which the Myers have

not cited or argued, there is no stated or apparent reason why MERS could not accept

assignment from New Century as would any other assignee.

Even if there was proof that MERS is or was a nominee or beneficiary of the

security instrument, which there is not, this Court addressed the issue in *Trang v.*

*Bean,* 600 Fed. Appx. 191, 194 (5th Cir. 2015).  There the Court observed that

MERS obtained its right to assign the Deed of Trust when the Deed of Trust was

executed, a right independent of any unfulfilled obligations on the part of the

executory contract rejecting bankrupt debtor. Thus, this Court concluded that the rights of MERS as nominee and beneficiary were not undone or reversed by the debtor's rejection of executory contracts in bankruptcy.[3] *Id.* citing *In re Marron,* 485 B.R. 485, 488–89 (D.Mass.2012) for the proposition that a lender's bankruptcy does not affect the ability of MERS to assign a mortgage.

The argument that New Century Mortgage and Home123 Corporation's rejection of executory contracts voids transfers and assignments fails. It accordingly follows that the assignments and transfers are not void. As a result, the Myers have no ability to contest the assignments, because they cannot defend against an assignee's efforts to enforce the obligation on a ground that might merely render an assignment voidable. *Reinagel v. Deutsche Bank Nat. Tr. Co.,* 735 F.3d 220 (5th Cir. 2013).

## LIMITATIONS

Under Texas law, a secured lender must bring suit for ... the foreclosure of a real property lien not later than four years after the day the cause of action accrues. Tex. Civ. Prac. and Rem. Code § 16.035(a). If a note or deed of trust secured by real property contains an optional acceleration clause, as in this case, the action for foreclosure accrues when the holder actually exercises its option to

---

[3] It is further noteworthy that the rejection notice relied upon by the Myers ROA.568 does not expressly state New Century's rejection is a *termination* of existing contracts with MERS.

accelerate. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001). To exercise this option, the holder must send both a notice of intent to accelerate and a notice of acceleration *EMC Mortg. Corp. v. Window Box Ass'n, Inc.,* 264 S.W.3d 331, 335-36 (Tex. App.—Waco 2008, no pet.).

A holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d at 566–67. Abandonment of acceleration has the effect of restoring the contract to its original condition, thereby restoring the note's original maturity date for purposes of accrual. *Khan v. GBAK Props.,* 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Based on the evidence and arguments that were before the district court, it determined that limitations had not expired and that Wilmington Saving's right of foreclosure was not time barred. No evidence submitted in the summary judgment briefing indicated that the Myers objected to Wilmington Savings and its transferors rescissions or that the Myers detrimentally relied on the accelerations. *See Swoboda v. Wilshire Credit Corp.,* 975 S.W.2d 770, 776–77 (Tex.Ct.App.1998) ("[I]f a creditor exercises the option to accelerate and makes a declaration to that effect, the election to accelerate can be revoked or withdrawn at any time, so long as the debtor has not detrimentally relied on the acceleration."). When the various accelerations were abandoned either expressly or by action of Wilmington Savings and its

transferors, the effect was to "restore the contract to its original condition." *Khan v. GBAK Props.,* 371 S.W.3d at 353. *See also, Boren v. U.S. Nat. Bank Ass'n,* 807 F.3d 99, 104 (5th Cir. 2015).

Through their limitations argument, the Myers proffer that the numerous accelerations and abandonments of acceleration were effective as a waiver of Wilmington Savings, and presumably its transferors to *ever* accelerate the note again. Such is contrary to Texas law. In *Moore v. Wells Fargo Bank, N.A. as trustee for MASTR Asset Backed Sec. Tr. 2004-OPT2, Mortgage Pass-Through Certificates,* 685 S.W.3d 843, 846 (Tex. 2024), this Court requested guidance from the Texas Supreme Court on these issues. In response, the Texas Court provided clear interpretation of Texas law effectively and clearly affirming that 1) abandonment or rescission of an acceleration restores the original maturity date and resets the limitations period; and 2) rescission does not affect a lienholder's right to accelerate the maturity date of the debt in the future nor does it waive past defaults.

## LOAN DEFAULT

The summary judgment record ROA.426 establishes that the Myers home equity loan is in default. The Loan is currently due for July 1, 2009 monthly installment payment. ROA.439, ¶ 15. A notice of default was provided to Leeroy Myers at the property address on or about January 29, 2021. ROA.496-503.

The summary judgment record ROA.426 further establishes that on January 13, 2015, Green Tree notified the Meyers of default and intent to accelerate. On October 30, 2015, Ditech Financial, LLC f/k/a Green Tree filed an expedited foreclosure proceeding action ("Second Application for Foreclosure"), in the 151st Judicial District Court, Harris County, Texas, Case No. 2015-65145. The Myers filed an action in the 129th Harris County District Court ROA.512 claiming that the statute of limitations to enforce the Loan had expired and that the assignments were not recorded. Ditech removed the matter to the United States District Court for the Southern District of Texas under Case No. H-16-cv-01053. In that proceeding, Ditech sought and was granted summary judgment. ROA. 511, 518. In the 2016 litigation, the district court found that the record established that Ditech had effectively and timely rescinded accelerations by several acts, including:

- On October 5, 2009 Litton – a predecessor transferor - notified the Myers that it was accelerating the loan maturity date due to non-payment. Litton obtained a court order authorizing non-judicial foreclosure in 2010. However, Litton did not pursue foreclosure prior to January 26, 2011 when it assigned the deed of trust to Green Tree Servicing LLC. Thereafter, Green Tree accepted a payment from plaintiffs in January 2012 and applied it to the outstanding loan balance.[4]

- On August 19, 2013, counsel representing Green Tree sent plaintiffs a "Rescission of Acceleration" notice stating that "the notice of

---

[4] Even when a note holder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Karam v. Brown,* 407 S.W.3d 464, 473 (Tex. App.—El Paso 2013, no pet.)

acceleration dated October 5, 2009 and all prior notices of acceleration" are rescinded, and instructing plaintiffs to continue making payments to Green Tree. Green Tree accepted and applied another payment on the debt on September 27, 2013. The Myers made no further payments.

- On April 23, 2014, counsel representing Green Tree in its capacity as both the mortgage servicer and mortgagee of the note and deed of trust, sent a Notice of Default and Intent to Accelerate giving plaintiffs 30 days to cure the default in order to avoid acceleration and foreclosure.

- On January 13, 2015 Green Tree sent another notice of default to plaintiffs.

The district court in the removed 2016 litigation signed its judgment on June 14, 2017. Thereafter, on November 18, 2019, after mailing the Myers a notice of default and intent to accelerate, Wilmington Savings filed an application for foreclosure in the 127th Judicial District Court, Harris County, Cause No. 2019-83092. ROA.431 Defendants filed a motion to dismiss the application, citing expiration of the statute of limitations and unrecorded assignments. On January 7, 2021, Wilmington Savings filed a notice of nonsuit and notice of rescission of acceleration in the proceeding. *Id.* On January 29, 2021, Selene Finance LP, as servicer for Wilmington Savings, sent a notice of default and intent to accelerate to the Myers at the Property Address. ROA.496-503. Wilmington Savings thereafter filed this suit on January 10, 2022 ROA.9. With all previous accelerations having been rescinded either expressly or by acceptance of payments on behalf of the lender,

the statute of limitations was reset and the district court proceeding brought timely within four years of the most recent re-acceleration. Suit was timely brought. *Moore v. Wells Fargo Bank, N.A. as trustee for MASTR Asset Backed Sec. Tr. 2004-OPT2, Mortgage Pass-Through Certificates,* 685 S.W.3d 843, 846 (Tex. 2024).

## DENIAL OF DUE PROCESS

In their brief, the Myers urge that the district court's conducting an *ex parte* scheduling conference "forced the Myers to file the Defendants' Rule 4(m) Motion to Dismiss. ROA.254. Without authority or citation to the record, the Myers appear to assign the district court's action as a denial of their due process rights.

The conference referred to by the Myers occurred on July 12, 2022 and lasted two minutes. ROA.783:5-784:10. At the conference, limited processes for the future resolution of the case were discussed. At the conference, the issue of the effectiveness of service of process on the Myers had not reached its full maturity. Once it had, a subsequent scheduling conference was held – the July 29, 2022 conference - wherein the district court, by statements on the record effectively rescinded comments made at the previous *ex parte* scheduling conference. *See* ROA.799:7-800:3. Thus, any error committed by the district court in conducting the July 12, 2022 scheduling conference in no way impaired the Myers from presenting their case, and was thus harmless error. *Kanida v. Gulf Coast Med. Pers. LP,* 363 F.3d 568, 579 (5th Cir. 2004).

Rule 56 does not require the moving party to *negate* the elements of the nonmoving party's case; to the contrary, "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885, 110 S. Ct. 3177, 3187, 111 L. Ed. 2d 695 (1990), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose. *Id.* "[i]t is an elementary proposition, and the supporting cases too numerous to cite, that this court may 'affirm the district court's judgment on any grounds supported by the record' ...." *Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.,* 509 F.3d 216, 221 (5th Cir.2007) (citing *Sojourner T v. Edwards,* 974 F.2d 27, 30 (5th Cir.1992)).

The answer of Myers contained affirmative defenses of limitations, waiver lack of standing, and lack of jurisdiction. Each of those defenses were addressed by the summary judgment record and as more thoroughly examined and reviewed herein. The same holds true for the Myers counterclaim, in which the Myers claim

an offset for the value of repairs to the Myers homestead after hurricane Harvey, a bad faith failure to settle the issues made the subject of the case for twelve years, and a Texas Finance Code violation. None of the defenses or the issues related to the counterclaim were addressed in the Myers response to Wilmington Savings motion for summary judgment, or were addressed but found by the district court to be insufficient to raise a genuine issue of material fact precluding judgment. Wilmington Savings established its summary judgment case, and once it did, it then became incumbent on the Myers to show that summary judgment is not appropriate. *Provident Life & Acc. Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001) citing *Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991). The Myers failed in this endeavor and the district court's judgment should be upheld.

## CONCLUSION

The district court was correct in granting Wilmington Savings' motion for summary judgment. The Court correctly found that it had jurisdiction, that Wilmington Savings had standing and that Wilmington Savings suit was timely brought under applicable limitations standards. Wilmington Savings accordingly prays that this Court sustain the Judgment and findings of the district court and affirm summary judgment for Wilmington Savings in all respects.

MCCARTHY & HOLTHUS, LLP

/s/ Robert L. Negrin
Robert L. Negrin / SBN: 14865550
Regrin@mccarthyholthus.com
Cole Patton / SBN: 24037247
cpatton@mccarthyholthus.com
1255 West 15th Street, Suite 1060
Plano, TX 75075
214-291-3800 (Telephone)
214-291-3801 (Facsimile)

## CERTIFICATE OF SERVICE

I certify that on October 25, 2024, the foregoing document was forwarded through the Court's ecf filing system on counsel for Appellants in accordance with 5th Circuit Rule 25.5.

/s/ Robert L. Negrin
Robert L. Negrin

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1:  this document contains 7,658 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO (Version 2408) in 14 point Times New Roman.

/s/ Robert L. Negrin
Robert L. Negrin